**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

MASSOUD HEIDARY,

       Plaintiff,

v.

       Civil Action No.: TDC-22-2319

AMAZON.COM, INC. and
RING LLC

       Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS PURSUANT FED R. CIV. P. 12(B)(6) AND**
**RING LLC'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(3)**

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL AND PROCEDURAL BACKGROUND......................................... 3

    A.    The Asserted Claims Require a Fire Protection System with Automatic
Fan Shut Off............................................................................................... 3

    B.    Plaintiff Alleges Infringement by the Accused Products But Does Not
Include Factual Allegations That Plausibly Suggest Defendants Commit
Any Acts of Infringement .......................................................................... 4

III.  LEGAL STANDARD......................................................................................... 5

    A.    Pleading Direct Infringement and Induced Infringement Under 35 U.S.C.
§§ 271(a) and (b)........................................................................................ 5

        1.    Direct Infringement Requires a Sale of the "Complete Invention" ........... 5

        2.    Direct Infringement is Limited to Statutory Acts of Infringement............ 6

        3.    Induced Infringement Requires Active Encouragement and Intent........... 9

    B.    Venue Under 28 U.S.C. § 1400(b)............................................................. 9

IV.   ARGUMENT..................................................................................................... 10

    A.    Plaintiff Fails to Plausibly Plead Direct Infringement Against Defendants ........ 10

        1.    Plaintiff Does Not Plead That Defendants Sell the "Complete
Invention," Which Requires a Specific Set of Components Capable
of Being Used in a Specific Way ............................................................. 11

        2.    Defendants Are Not Statutory Sellers of the Accused Third Party
Products Under 35 U.S.C. § 271(a) ......................................................... 13

            a.    Defendants do not sell or offer for sale the Accused Third
Party Smoke Alarms and therefore do not directly infringe ........ 13

            b.    At most, Amazon is a Bailee of the Accused Third Party
Smoke Alarms and therefore does not directly infringe .............. 15

    B.    Plaintiff Fails to Plausibly Plead the Required Intent and Affirmative
Encouragement Elements of Induced Infringement .......................................... 18

        1.    Plaintiff Fails to Plausibly Plead the Existence of a Direct Infringer ...... 18

        2.    Plaintiff Fails to Plausibly Plead Intent to Induce Infringement.............. 18

        3.    Plaintiff Fails to Plausibly Plead Affirmative Acts of
Encouragement ........................................................................................ 19

    C.    Plaintiff's Pro Se Status Does Not Obviate the Factual Deficiencies In the
Complaint, Which Must Adhere to the Federal Pleading Requirements............. 21

    D.    Venue is Improper Against Ring LLC........................................................ 22

1.      Plaintiff Did Not and Cannot Plausibly Plead Venue Facts Against
        Ring.................................................................................................................. 22

2.      Venue for Amazon Cannot be Imputed to Ring ...................................... 22

V.      CONCLUSION........................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Display Sys. V. Kent State Univ.*,
212 F.3d 1272 (Fed. Cir. 2000)................................................................................5

*Allstate New Jersey Ins. Co. v. Amazon.com, Inc.*,
Civil Action No. 3:17-cv-2738, 2018 WL 3546197 (D.N.J. July 24, 2018) ..............14, 15, 17

*Altinex Inc. v. Alibaba.com Hong Kong Ltd.*,
Civil Action No. 8:13-cv-01545-JVS, 2016 WL 6822235 (C.D. Cal. Mar. 25,
2016) ................................................................................................................13

*Andra Grp., LP v. Victoria's Secret Stores, L.L.C.*,
6 F.4th 1283 (Fed. Cir. 2021) ................................................................................10, 24

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..............................................................................................5, 19

*Bing v. Brivo Sys., LLC*,
959 F.3d 605 (4th Cir. 2020) ................................................................................21, 22

*Blazer v. eBay, Inc.*,
Civil Action No. 1:15-CV-01059-KOB, 2017 WL 1047572 (N.D. Ala. Mar.
20, 2017) ..............................................................................................................7, 13

*Bos. Sci. Corp. v. Nevro Corp.*,
415 F. Supp. 3d 482 (D. Del. 2019)........................................................................11

*Bostock v. Clayton Cnty.*,
140 S. Ct. 1731 (2020)..........................................................................................6

*California Beach Co., LLC v. Exqline, Inc.*,
Civil Action No. 3-20-cv-01994, 2020 WL 6544457 (N.D. Cal. Nov. 7, 2020)
(Alsup, J.)..............................................................................................................2, 19, 20

*Cecala v. NationsBank Corp.*,
40 F. App'x. 795 (4th Cir. 2002) ............................................................................21

*Celgene Corp. v. Mylan Pharms. Inc.*,
17 F.4th 1111 (Fed. Cir. 2021) ..............................................................................22, 23

*In re Cray Inc.*,
871 F.3d 1355 (Fed. Cir. 2017)..............................................................................10

i

*Deepsouth Packing Co. v. Laitram Corp.*,
  406 U.S. 518 (1972).................................................................................5, 6, 11

*DSU Med. Corp. v. JMS Co.*,
  471 F.3d 1293 (Fed. Cir. 2006) (*en banc*) ...............................................................9

*Enercon GmbH v. International Trade Comm'n*,
  151 F.3d 1376 (Fed. Cir. 1998)................................................................................6

*Erie Ins. Co. v. Amazon.com, Inc.*,
  925 F.3d 135 (4th Cir. 2019) .................................................................8, 15, 16, 17

*Fourco Glass Co. v. Transmirra Prod. Corp.*,
  353 U.S. 222 (1957)................................................................................................9

*In re Google LLC*,
  949 F.3d 1338 (Fed. Cir. 2020)..............................................................................10

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
  831 F.3d 1369 (Fed. Cir. 2016)................................................................................6

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
  139 S. Ct. 524 (2019)...............................................................................................6

*in Microsoft Corp. v. AT&T Corp.*,
  550 U.S. 437 (2007).................................................................................................5

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
  572 U.S. 915 (2014)...............................................................................................18

*Linear Technology Corp. v. Micrel, Inc.*,
  275 F.3d 1040 (Fed. Cir. 2001)..............................................................................16

*Medgraph, Inc. v. Medtronic, Inc.*,
  843 F.3d 942 (Fed. Cir. 2016)..................................................................................5

*Medicines Co. v. Hospira, Inc.*,
  881 F.3d 1347 (Fed. Cir. 2018)................................................................................7

*Milo & Gabby LLC v. Amazon.com, Inc.*,
  693 F. App'x 879 (Fed. Cir. 2017), *cert. denied*, 138 S. Ct. 335 (2017)........................ *passim*

*Minnesota Min. Mfg. Co. v. Chemque, Inc.*,
  303 F.3d 1294 (Fed. Cir. 2002)..............................................................................16

*Modern Font Applications LLC v. Peak Resturant Partners, LLC*,
  Civil Action No. 2:19-CV-221-TS-DBP, 2020 WL 1692744 (D. Utah April 7,
  2020), *aff'd*, No. 2020-2278, 2022 WL 726972 (Fed. Cir. Mar. 10, 2022)......................24, 25

*Parallel Networks Licensing, LLC v. Microsoft Corp.*,
   Civil Action No. 13-2073KAJ, 2017 WL 11557656 (D. Del. Apr. 10, 2017) ..................11, 12

*PharmaStem Therapeutics, Inc. v. Viacell, Inc.*,
   491 F.3d 1342 (Fed. Cir. 2007)..................................................................................7, 8, 9, 17

*POWERbahn, LLC v. Found. Fitness LLC*,
   Civil Action No. 1:17-CV-02965-AT, 2020 WL 8224926 (N.D. Ga. Sept. 8,
   2020) ......................................................................................................................................14

*Rotec Indus., Inc. v. Mitsubishi Corp.*,
   215 F.3d 1246 (Fed. Cir. 2000)..........................................................................................6, 7

*Sturm v. Boker*,
   150 U.S. 312 (1893)..................................................................................................................8

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
   581 U.S. 258 (2017)......................................................................................................9, 10, 22

*TMI Sols. LLC v. Bath & Body Works Direct, Inc.*,
   Civil Action No. 17-965-LPS-CJB, 2018 WL 4660370 (D. Del. Sept. 28,
   2018) ......................................................................................................................................11

*In re Volkswagen Grp. of Am., Inc.*,
   28 F.4th 1203 (Fed. Cir. 2022) ...................................................................................10, 24, 25

*Wright Mfg. Inc. v. Toro Co.*,
   Civil Action No. MJG-11-1373, 2011 WL 6211172 (D. Md. Dec. 13, 2011) ..............9, 18, 19

**Statutes**

19 U.S.C. § 1337.............................................................................................................................6

28 U.S.C. § 1391(c) ........................................................................................................................9

28 U.S.C. § 1400(b) ............................................................................................................9, 10, 22

35 U.S.C. § 271(a) .............................................................................................................. *passim*

35 U.S.C. § 271(b) ...............................................................................................................5, 9, 19

Title VII of the Civil Rights Act of 1964 (Pub. L. 88-352)..........................................................21

Copyright Act............................................................................................................................14, 16

Fair Labor Standard Act...................................................................................................................6

Federal Arbitration Act....................................................................................................................6

New Jersey Products Liability Act ....................................................................................14

Patent Act..........................................................................................................................8, 16

Pub. L. No. 98-622, 98 Stat. 3383, 3383 .................................................................................5

Uniform Commercial Code...................................................................................................6, 7, 16

**Other Authorities**

29 C.F.R. § 541.501(b) (2003)...............................................................................................6

*Black's Law Dictionary* (3d ed. 1933)...............................................................................6

*Black's Law Dictionary* (6th ed. 1990).............................................................................6

*Black's Law Dictionary* (8th ed. 2004).............................................................................6

Federal Rule of Civil Procedure 12(b)............................................................................1, 5, 19, 25

*Webster's Dictionary* 2003 (Third New International 1986)............................................6

This patent infringement case against Amazon.com, Inc. ("Amazon") and Ring LLC ("Ring," and collectively, "Defendants") must be dismissed because the Defendants do not make, use, sell, offer to sell, or import the third-party products at issue in this case, which as the pleading recognizes, are smoke alarms made and sold by X-Sense and Aegislink. Plaintiff Massoud Heidary ("Plaintiff") fails to state a claim because the Complaint accuses purely third-party products and lacks allegations that Defendants sold those third-party products or committed any other statutory act of infringement. Plaintiff fails to allege that Defendants actually "sold" the smoke alarms consistent with the plain language of 35 U.S.C. § 271(a), and never even attempted to allege that Defendants had or has any role in the distribution or use of these devices whatsoever. The Complaint (ECF No. 1) should therefore be dismissed with prejudice under Federal Rule of Civil Procedure 12(b)(6). As an independent ground, Ring further moves to dismiss for improper venue under Rule 12(b)(3).

## I.    INTRODUCTION

The Complaint accuses two products by name: the X-Sense Wi-Fi Smoke Alarm and Aegislink Wi-Fi Smoke Alarm (the "Accused Products"). Complaint ¶ 12. The Complaint alleges that those products infringe U.S. Patent No. 10,380,862 (the "'862 Patent"), which claims a system for fire suppression in a building. Conspicuously absent from the Complaint, however, are any allegations that either Defendant *sells* the X-Sense or Aegislink smoke alarms. Indeed, the smoke alarms are manufactured, owned, and sold by third-parties, X-Sense and Aegislink, who are independent corporations that do business in their own names. Defendants do not sell the Accused Products—instead, Amazon operates an e-commerce marketplace where those third-parties sell the Accused Products, and Ring sells Ring products.

Applicable precedent—and common sense—confirms that Defendants cannot sell products they do not own, for a price they do not set, based on a description they did not create, to a buyer

to whom they cannot confer ownership rights. Instead, under well-settled distinctions between bailees (like Amazon or UPS) and sellers (like X-Sense and Aegislink), Amazon is not converted into an infringer by virtue of a third-party seller selling its own product. *California Beach Co., LLC v. Exqline, Inc.*, Civil Action No. 3-20-cv-01994, 2020 WL 6544457, at *2 (N.D. Cal. Nov. 7, 2020) (Alsup, J.) (stating e-commerce marketplaces like Amazon are more akin to "the landlord of a virtual strip-mall," having "provided a virtual plot and support services to and collected rents from" businesses who sell goods); *see also Milo & Gabby LLC v. Amazon.com, Inc.*, 693 F. App'x 879, 885–88 (Fed. Cir. 2017), *cert. denied*, 138 S. Ct. 335 (2017) (finding no statutory "sale" by Amazon under the copyright statute, based on "clear parallels between the legal standards" of the patent and copyright statutes). Providing an e-commerce marketplace is neither a statutory sale of a specific product, nor any other statutory act of infringement, because it lacks the hallmarks associated with traditional commercial sales (ownership of a good, transfer of ownership to a customer, and setting a price for the transfer). *California Beach Co.,* 2020 WL 6544457, at *2. And Ring is not even a bailee of the X-Sense and Aegislink products, and is not somehow converted into an infringer by virtue of being a wholly owned subsidiary of Amazon. Thus, the Complaint fails to plausibly allege infringement against Defendants; at least, it pleads that independent businesses—X-Sense and Aegislink—sell their own goods in their own names.

This principle of law is sufficient to decide this motion, but it has particular force in context of the patent asserted in the Complaint, which requires not only a smoke alarm, but also requires (1) additional, specific components and (2) specific functions that must be performed to constitute the claimed fire suppression system manner. Plaintiff does not allege—much less plausibly allege—that the Accused Products consist of the same extremely specific components that must be used in a very specific manner, let alone that the Accused Products are attributable to

Defendants. In other words, Defendants are not alleged to practice the complete invention and, thus, the Complaint fails to state a claim on its face. The Complaint also fails to plausibly allege that a direct infringer exists or that Defendants had requisite intent to support a claim for induced infringement.

Finally, venue is improper against Ring as the Complaint does not allege (and cannot plausibly allege) that Ring "resides" in the District of Maryland or that it has a "regular and established place of business" in the District of Maryland as that term is used in the patent statute.

For these reasons, the Complaint should be dismissed for failure to state a claim. Because Plaintiff cannot cure these deficiencies with an amended complaint—Plaintiff cannot plead around the law that venue is not proper in this district against Ring, that Defendants do not practice the complete invention, that Defendants are not statutory sellers, or that Defendants did not act with the requisite intent for induced infringement—the Complaint should be dismissed with prejudice. That is particularly appropriate where, as here, the Court provided a pre-filing letter and hearing during which Plaintiff affirmatively declined the Court's invitation to amend his complaint and elected to stand on the Complaint in response to the arguments raised in this motion.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Asserted Claims Require a Fire Protection System with Automatic Fan Shut Off

On September 2, 2022, Plaintiff filed this Complaint alleging infringement of '862 Patent. The '862 Patent discloses a system for suppressing the spread of fire in a building by shutting off the fan in a heating, ventilation, and air conditioning (HVAC) system when a fire is detected by the smoke detector. '862 Patent at *Summary of Invention*. As the Complaint acknowledges, the '862 Patent claims require numerous specific components as part of that fire suppression system, including a plurality of smoke detector units, a camera connected to each smoke detector, a

3

normally closed relay, a fan controller connected to an HVAC unit, a thermostat, a display unit, a micro-controller for the display unit, a wireless receiver for the micro-controller and a telephone system. *Id.* at cls. 1–6, 3:5-31, 4:1–30; Complaint ¶ 13. Selling a device that includes all of these components is not enough to practice the claims of the Asserted Patent, however, because they require the components to be capable of shutting off the thermostat and fan unit. '862 Patent at cls. 1–6, 3:5-31, 4:1–30. Specifically, all the claims require the following functionality:

> the respective smoke detector passes a signal to a normally closed relay to open and to cut-off the power supply to the thermostat as well as fan controller thereby shutting off the fan unit; and activates the respective camera and the wireless transmission unit to transmit a signal to a wireless receiver connected to the micro-controller so as to display the location of the fire on the display unit connected to the micro-controller

*Id.* at cls. 1–6.

### B.    Plaintiff Alleges Infringement by the Accused Products But Does Not Include Factual Allegations That Plausibly Suggest Defendants Commit Any Acts of Infringement

Plaintiff asserts a single count of infringement of the '862 Patent, and alleges that it is infringed by the "X-SENSE Wi-Fi Smoke Alarm" and the "Aegislink Wi-Fi Smoke Alarm." Complaint ¶ 12. Plaintiff does not accuse any product sold by Amazon or Ring of infringement.

Plaintiff does not plead any factual basis to plausibly allege that Defendants make, use, sell, offer to sell, or import the Accused Products. *See* 35 U.S.C. 271(a). First, Plaintiff does not plead that Defendants make, use, or import the Accused Products. *See generally* Complaint. Second, with respect to "sell" or "offer to sell," Plaintiff does not plausibly plead sales or offers to sell by *Defendants*. The Complaint contains no plausible allegations that Defendants ever take title to the Accused Products, nor does it plead that Defendants convey title to customers who purchase the smoke alarms from X-Sense or Aegislink. *Id*. Nor does Plaintiff allege any of the other indicators that might suggest a statutory sale—Plaintiff does not allege that Defendants describe

4

themselves as a seller of the Accused Products, for example, or that Defendants set the price for the Accused Products or control "which information or pictures were put on the product-detail page." *See Milo & Gabby*, 693 F. App'x at 886–87 (finding no copyright infringement by Amazon because it does not take or pass title, does not set price, and does not control the substance of the content of the "product-detail page").

## III.   LEGAL STANDARD

### A.   Pleading Direct Infringement and Induced Infringement Under 35 U.S.C. §§ 271(a) and (b)

To survive a motion to dismiss under Rule 12(b)(6), the complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). The factual allegations require more than labels, conclusions, or a "formulaic recitation" of claim elements, and the Court must ignore legal conclusions, even when the "legal conclusion" is "couched as a factual allegation." *Id.* at 678, 668.

#### 1.   Direct Infringement Requires a Sale of the "Complete Invention"

"To establish infringement a party must show that the accused device contains, either literally or by equivalents, every limitation of the claimed invention." *Advanced Display Sys. V. Kent State Univ.*, 212 F.3d 1272, 1287 (Fed. Cir. 2000). "A finding of direct infringement requires that 'all steps of the claim are performed by or attributable to a single entity.'" *Medgraph, Inc. v. Medtronic, Inc.*, 843 F.3d 942, 948 (Fed. Cir. 2016). This requirement is not met when a patentee pleads that a defendant makes, uses, or sells only a ***portion*** of the patented invention: as the Supreme Court has recognized, "if anything is settled in patent law, it is that . . . patent[s] cover[] only the totality of the elements in the claim and that no element, separately viewed, is within the grant." *Deepsouth Packing Co. v. Laitram Corp.*, 406 U.S. 518, 528 (1972), *superseded in part by statute,* Pub. L. No. 98-622, 98 Stat. 3383, 3383*, as recognized in Microsoft Corp. v. AT&T Corp.,*

550 U.S. 437, 444 (2007); *see also Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1252 n.2 (Fed. Cir. 2000) ("[A]s to claims brought under § 271(a), *Deepsouth* remains good law; one may not be held liable under § 271(a), for 'making' or 'selling' less than a complete invention.").

### 2.    Direct Infringement is Limited to Statutory Acts of Infringement

An enumerated list of discrete acts qualify as direct infringement. 35 U.S.C. § 271(a). A party infringes if it imports, "makes, uses, offers to sell, or sells any patented invention." *Id.* These are the *only* statutory acts of direct infringement—the Court "may not engraft [its] own" changes "onto the statutory text," even to accommodate policy concerns. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530–31 (2019) (addressing the Federal Arbitration Act). Here, the only direct infringement allegations that Plaintiff has made against Defendants, when read very liberally, appear to assert infringement based on a sale or offer for sale. *See generally* Complaint.

"Sale" has a well-established legal meaning. *Black's Law Dictionary* 1576–77 (3d ed. 1933) (defining "sale" as "[a] contract . . . [where] in consideration of the payment . . . of a certain price in money, transfers . . . the title and the possession"); *Black's Law Dictionary* 1364 (8th ed. 2004) (defining "sales" as "[t]he transfer of property or title for a price"); U.C.C. § 2-106 ("[a] 'sale' consists in the passing of title from the seller to the buyer for a price."); 29 C.F.R. § 541.501(b) (2003) (sale under the Fair Labor Standard Act includes transfer of title); *see also Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1738 (2020) (the object of statutory interpretation is to determine "the ordinary public meaning of its terms at the time of its enactment"). The Federal Circuit embraces an "ordinary meaning of sale" as the word is used in section 271(a). *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 831 F.3d 1369, 1377–78 (Fed. Cir. 2016) (relying upon U.C.C. § 2-106; *Black's Law Dictionary* (8th ed. 2004)); *Enercon GmbH v. International Trade Comm'n*, 151 F.3d 1376, 1381–82 (Fed. Cir. 1998) (addressing sale in the context of 19 U.S.C. § 1337) (citing *Black's Law Dictionary* (6th ed. 1990); *Webster's Dictionary* 2003 (Third New International 1986);

6

U.C.C. § 2-106)); *see also Rotec Indus.*, 215 F.3d at 1254–55 ("Therefore, we similarly define § 271(a)'s 'offer to sell' liability according to the norms of traditional contractual analysis."). A "sale" under § 271(a) generally requires a transfer of title from the seller to the buyer, for a price agreed by the parties to the sale. *Blazer v. eBay, Inc.*, Civil Action No. 1:15-CV-01059-KOB, 2017 WL 1047572, at *2 (N.D. Ala. Mar. 20, 2017) (citing *PharmaStem Therapeutics, Inc. v. Viacell, Inc.*, 491 F.3d 1342, 1357 (Fed. Cir. 2007)); *Medicines Co. v. Hospira, Inc.*, 881 F.3d 1347, 1351 (Fed. Cir. 2018) ("A commercial sale 'is a contract between parties to give and to pass rights of property for consideration which the buyer pays or promises to pay the seller for the thing bought or sold.'"). Thus, "the presence or absence of passage of title" is "a significant indicator of whether a sale has occurred in the patent law context." *See Milo & Gabby,* 693 F. App'x at 886 (addressing sale under the copyright statute).

While the passage of title is a significant indicator of whether or not a sale has occurred, courts also consider (i) whether there is an identified third party associated with the goods being sold (i.e., whether a specific seller, like X-SENSE or Aegislink, is associated with the goods, or whether the marketplace advertises sale of the goods in its own name ("sold by Amazon")), (ii) whether the alleged seller sets the price, and (iii) whether the e-commerce marketplace creates the product-specific advertising information on the "product-detail page." *See Milo & Gabby,* 693 F. App'x at 886 (addressing Amazon sales under the copyright statute and citing to cases analyzing "sale" under the patent statute). Following this logic, consider an analogy: in the ordinary sense, a strip mall does not sell pizza; the pizza shop at the mall does. Identifying the marketplace where a purchase (e.g., the mall) is made is different than identifying the entity actually selling the product (e.g., the pizza shop). Thus, the common usage of the word "sale" suggests Amazon does not "sell" X-Sense or Aegislink smoke alarms; X-Sense and Aegislink do.

Additionally, for more than a century, courts have "recognized distinction between bailment and sale"—and only the latter creates liability for infringement. *PharmaStem*, 491 F.3d at 1357 (citing *Sturm v. Boker*, 150 U.S. 312, 329–30 (1893)). On the one hand are "a manufacturer, distributer, dealer, and retailer who own—i.e., have title to—the products during the chain of distribution." *Erie Ins. Co. v. Amazon.com, Inc.*, 925 F.3d 135, 141 (4th Cir. 2019). Those entities "are sellers." *Id.* By contrast, "shippers, warehousemen, brokers, marketers, auctioneers, and other bailees or consignees, who do not take title to property during the course of a distribution but rather render services to facilitate that distribution or sale, are not sellers." *Id*.

Providing bailment services—even for a fee, and even when the defendant physically possesses the Accused Products—does not amount to a statutory sale under the Patent Act as a matter of law. *PharmaStem*, 491 F.3d at 1357. *PharmaStem* considered a patent for storing a patient's fetal blood, and then "reconstituting" it when that patient was an adult, to use for treatment. *Id.* at 1347–48 ("The treatment is based on the discovery that blood from a newborn infant's umbilical cord is a rich source of a type of stem cells useful for rebuilding an individual's blood . . . ."). The patentee sued defendants who "sold a service to families of newborn infants (collection, processing, and cryopreservation of the newborn's umbilical cord blood)," and accused them of a statutory sale. *Id.* at 1356–57. The Federal Circuit found that there was no sale under the patent statute as a matter of law, because "defendants were never owners of the blood, but instead were merely bailees." *Id.* at 1357. The court acknowledged that "the defendants provided the blood to transplanters in satisfaction of their contractual obligation to ship the families' cord blood samples to a transplanter upon direction." *Id.* But neither possession of the blood nor defendants' fee for their service impacted defendants' status as bailees. *Id.* (rejecting argument that defendants' fee proved a sale had occurred). Payment for a service related to

facilitating the provision of goods typifies a bailment relationship, and does not convert a bailee into a seller. *Id.* at 1357–58.

### 3. Induced Infringement Requires Active Encouragement and Intent

Under 35 U.S.C. § 271(b), "[w]hoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). "The inducement rule . . . premises liability on purposeful, culpable expression and conduct." *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (*en banc*). To state a claim for induced infringement under 35 U.S.C. § 271(b), Plaintiff must plausibly allege the "elements of induced infringement," which "are: (1) direct infringement; (2) 'knowledge of acts alleged to constitute infringement'; and (3) 'specific intent and action to induce infringement.'" *Wright Mfg. Inc. v. Toro Co.*, Civil Action No. MJG-11-1373, 2011 WL 6211172, at *3, n.5 (D. Md. Dec. 13, 2011) (citing *DSU Med.*, 471 F.3d at 1305). The "specific intent" prong "requires evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities." *DSU Med.*, 471 F.3d at 1306. Moreover, "the intent requirement for inducement requires more than just intent to cause the acts that produce direct infringement. Beyond that threshold knowledge, the inducer must have an affirmative intent to cause direct infringement." *Id.*

### B. Venue Under 28 U.S.C. § 1400(b)

Section "1400(b) 'is the sole and exclusive provision controlling venue in patent infringement actions, and . . . is not to be supplemented by . . . § 1391(c).'" *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258, 266 (2017) (quoting *Fourco Glass Co. v. Transmirra Prod. Corp.*, 353 U.S. 222, 229 (1957)) (ellipses in original). Section 1400(b) provides that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has commited acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). A "domestic corporation 'resides' only in its

State of incorporation for purposes of the patent venue statute." *Andra Grp., LP*, 6 F.4th at 1287 (quoting *TC Heartland*, 581 U.S. at 262).

Further, "to show that a defendant has a regular and established place of business, there are three requirements: '(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant.'" *Id.* (quoting *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017)). "[A] 'regular and established place of business' requires the regular, physical presence of an employee or other agent of the defendant conduting the defendant's business at the alleged 'place of business.'" *Id.* (quoting *In re Google LLC*, 949 F.3d 1338, 1346 (Fed. Cir. 2020)). This Court must "consider whether these requirements are met with the understanding that the Supreme Court has repeatedly cautioned against a broad reading of the patent venue statute." *In re Volkswagen Grp. of Am., Inc.*, 28 F.4th 1203, 1208 (Fed. Cir. 2022); *In re Google*, 949 F.3d at 1346. "If any [of these] statutory requirement[s] [are] not satisifed, venue is improper under § 1400(b)." *In re Volkswagen*, 28 F.4th at 1208 (alterations in original).

In patent infringement cases, "[t]he plaintiff has the burden of establishing proper venue under 28 U.S.C. § 1400(b)." *Andra Grp., LP v. Victoria's Secret Stores, L.L.C.*, 6 F.4th 1283, 1287 (Fed. Cir. 2021). "Whether venue is appropriate in a patent infringement action is unique to patent law and therefore Federal Circuit law applies." *In re Volkswagen*, 28 F.4th at 1207.

## IV.    ARGUMENT

### A.    Plaintiff Fails to Plausibly Plead Direct Infringement Against Defendants

Here, based upon even a very liberal reading of the Complaint, the only statutory direct infringement allegations against Defendants are based on a sale and offer for sale. *See generally* Complaint.

10

### 1. Plaintiff Does Not Plead That Defendants Sell the "Complete Invention," Which Requires a Specific Set of Components Capable of Being Used in a Specific Way

As an initial matter, Plaintiff plainly fails to allege that Defendants infringe the "complete invention."[1] "To adequately plead direct infringement, a plaintiff needs to plead facts that plausibly indicate that the accused products contain each of the limitations found in the claim." *TMI Sols. LLC v. Bath & Body Works Direct, Inc.*, Civil Action No. 17-965-LPS-CJB, 2018 WL 4660370, at *9 (D. Del. Sept. 28, 2018). In particular, a complaint must "show *how* the defendant plausibly infringes by alleging some facts connecting the allegedly infringing product to the claim elements." *Bos. Sci. Corp. v. Nevro Corp.*, 415 F. Supp. 3d 482, 489 (D. Del. 2019) (emphasis in original). This requirement is not met when a patentee pleads that a defendant makes, uses, or sells only a *portion* of the patented invention: indeed, "if anything is settled in patent law, it is that . . . patents cover only the totality of the elements in the claim"—the "complete invention"—and "no element, separately viewed, is within the grant." *Parallel Networks*, 2017 WL 11557656, at *5.

Here, Plaintiff flouts the "complete invention" requirement. The Complaint lacks allegations related to virtually all of the elements of the specific smoke alarm system claimed in the Asserted Patent, let alone an allegation that those elements are "attributable to" Defendants (to the extent they exist at all). *See generally* Complaint; '862 Patent, cls. 1–6. The Accused Products are not alleged to be a "system" with all of the required components, including the "fan controller connected to an HVAC unit," "telephone system," and the "normally closed relay." *Id*. Moreover, these building-specific components exist, if at all, at the sole discretion of unnamed and unknown

---

[1] *Parallel Networks Licensing, LLC v. Microsoft Corp.*, Civil Action No. 13-2073KAJ, 2017 WL 11557656, at *5 (D. Del. Apr. 10, 2017) ("one may not be held liable under § 271(a) for 'making' or 'selling' less than a complete invention") (citing *Deepsouth Packing Co.*, 406 U.S. at 526–29).

11

third parties. Thus, the Complaint cannot plausibly allege that Defendants sell the patent's "***system***

for suppressing fire in a building,"** because Defendants are not selling any "system" with all of the

components required by the patent's claims. *See Parallel Networks*, 2017 WL 11557656, at \*5.

Even assuming that all of the appropriate components were ever assembled, the Asserted

Patent further requires that the components function in a very specific way that is not plausibly

pled. Specifically, the Asserted Patent requires that when a smoke detector detects smoke, three

actions must occur to fall within the scope of the claims:

> (1) "the respective smoke detector passes a signal to a normally closed relay ***to open and to cut-off the power supply to the thermostat***;"
>
> (2) "the respective smoke detector passes a signal to a normally closed relay to open and to ***cut-off the power supply to the*** . . . ***fan controller thereby shutting off the fan unit***;" and
>
> (3) "the respective smoke detector . . . activates the respective camera and the wireless transmission unit to transmit a signal to a wireless receiver connected to the micro–controller so as to display the location of the fire on the display unit connected to the micro-controller."

*See, e.g.,* '862 Patent at cl. 1–6 (emphasis added). The Complaint fails to plead that these functions

exist, let alone that such actions are attributable to the Accused Products. For example, neither

third-party smoke detector has a camera, nor are they pled to have the ability to shut off a building's

"thermostat," let alone both a building's "thermostat," ***and also*** the building's "fan unit" in the air

conditioner. Nor does the Complaint identify evidence that camera-based location is transmitted

to a display unit. Indeed, the Complaint does not identify any smoke detector that has a camera.

The Complaint thus fails to allege plausible allegations of direct infringement with respect to the

above functions as well.

Plaintiff, therefore, has failed to state a claim plausibly asserting that Defendants directly

infringe any claim of the Asserted Patent.

12

### 2. Defendants Are Not Statutory Sellers of the Accused Third Party Products Under 35 U.S.C. § 271(a)

#### a. Defendants do not sell or offer for sale the Accused Third Party Smoke Alarms and therefore do not directly infringe

The Complaint must be dismissed for a separate and independent reason: even if Plaintiff's allegations against Defendants limited solely to the Accused Products were sufficient for a direct infringement claim (they are not, see *supra* Section IV.A), as a matter of law, the Complaint additionally fails to allege sufficient facts that support a plausible direct infringement allegation against *Defendants* as alleged sellers. The Complaint references two products by name: the X-SENSE Wi-Fi Smoke Alarm and the Aegislink Wi-Fi Smoke Alarm. Both X-SENSE and Aegislink are independent corporations that do business in their own names. Neither of these entities are Defendants, and neither of these products are Defendants' products. Those facts are independently fatal to an allegation of infringement against Defendants.

Defendants do not sell or offer for sale the Accused Products—Amazon.com operates a marketplace where third-party sellers can list their goods for sale and Ring simply does not sell the Accused Products. *See Blazer v. eBay, Inc.*, Case No. 1:15-CV-01059-KOB, 2017 WL 1047572, at *2 (N.D. Ala. Mar. 20, 2017) ("For a 'sale' within the meaning of § 271(a) to occur, a transfer of property or title must occur."). A third-party listing on Amazon.com's e-commerce marketplace does not convert Amazon.com (and certainly not Ring) into a seller of the specific goods identified in the Complaint. Indeed, Amazon.com's e-commerce store explicitly lists "X-Sense US" and "Aegislink US" when indicating who each product is "Sold by," and courts have refused to find direct infringement by Amazon when "there is an unambiguous reference to a third party seller" like the Complaint here. *Altinex Inc. v. Alibaba.com Hong Kong Ltd.*, Civil Action No. 8:13-cv-01545-JVS, 2016 WL 6822235, at *10 (C.D. Cal. Mar. 25, 2016) ("***Amazon and Alibaba*** are not responsible, under a theory of direct infringement, for third parties offering to sell

13

allegedly infringing products on their platforms.") (emphasis added); *POWERbahn, LLC v. Found. Fitness LLC*, Civil Action No. 1:17-CV-02965-AT, 2020 WL 8224926, at *2–3 (N.D. Ga. Sept. 8, 2020) (refusing to hold alleged "intermediary" liable as direct infringer because "the Federal Circuit has repeatedly made clear the distinction between selling a product and providing a service," and analogizing to "a bailment relationship, where the holders of the product 'were not free to dispose of [it] as they chose'"); *see also Allstate New Jersey Ins. Co. v. Amazon.com, Inc.*, Civil Action No. 3:17-cv-2738, 2018 WL 3546197, at *10 (D.N.J. July 24, 2018) (collecting cases from "courts in other jurisdictions," who "have recently found that Amazon is not" a seller and holding that Amazon is not a seller under the New Jersey Products Liability Act).

The Federal Circuit's decision in *Milo & Gabby* is instructive. There, Amazon was accused of infringing copyrights allegedly covering certain pillowcases, based on third parties who sold allegedly similar pillowcases on Amazon.com. *Milo & Gabby*, 693 F. App'x at 880–81. The plaintiff alleged that the third parties' use of Amazon.com, or alternatively with Amazon's "Fulfillment" service (which provides logistical support related to shipping and storage), amounted to a statutory sale under the Copyright Act. *Id*. Reaffirming prior precedent analyzing a statutory sale under patent law, the Federal Circuit rejected plaintiff's arguments, finding neither the general listing on Amazon.com nor the logistics support were sufficient to make Amazon a statutory seller. *Id*. at 885–90. The Court therefore found that there was no statutory sale as a matter of law. *Id.* It did not matter that the product was held in "an Amazon warehouse for storage and Amazon boxed up and shipped the product when a sale was consummated on the website," because "Amazon never held title to the accused products"—and mere possession does not equate to title. *Id*. at 886. Critically, there was no evidence that Amazon could "sell the product on its own, even if done on behalf of the third-party seller." *Id.*

14

In light of the precedent on statutory sales, Plaintiff also does not plead any of the necessary factual predicates for alleging that Defendants are statutory sellers. *See supra* Section III.A. For example, Plaintiff does not allege:

- that Defendants ever take title to the X-Sense or Aegislink smoke alarms (*Milo & Gabby*);
- that Defendants transfer title to the X-Sense or Aegislink smoke alarms to customers (*Milo & Gabby*);
- that Defendants set the price for the X-Sense or Aegislink smoke alarms (*Milo & Gabby*); or
- that Defendants could choose to sell the third-party sellers' inventory of X-Sense or Aegislink smoke alarms without authorization from X-SENSE or Aegislink (*Milo & Gabby*)
- that Defendants "designed the product description for the website." (*Erie, infra*).

The Complaint thus fails to plausibly allege that Defendants infringe the Asserted Patent. Amazon's marketplace may have "made it easier for" X-Sense and Aegislink to do business, *Allstate*, 2018 WL 3546197, at *10, but the Complaint does not allege that these are Amazon's (much less Ring's) products—to the contrary, it expressly notes that the two accused "Wi-Fi Smoke Alarm" units are "X-SENSE" and "Aegislink" products. Accordingly, the Complaint fails to state a claim against Defendants.

**b.      At most, Amazon is a Bailee of the Accused Third Party Smoke Alarms and therefore does not directly infringe**

The most straightforward description of Amazon's role[2] in X-Sense and Aegislink's sale of its Accused Products is as a bailee—which is not a statutory seller, as a matter of law. Consistent with the distinction between bailment and sale, the Fourth Circuit and Federal Circuit have both concluded that Amazon, specifically, engages in bailment services rather than engaging in a statutory "sale." Among the leading cases is *Erie Insurance v. Amazon.com, Inc.*, a precedential Fourth Circuit decision which evaluated whether Amazon was a "seller" under the implementation

---

[2] Ring has no plausible role in X-Sense and Aegislink's sale of the Accused Products.

15

of the Uniform Commercial Code in Maryland or under Maryland's products liability law. 925 F.3d at 141.[3] *Erie* expressly relied on *Milo & Gabby* because—like the Patent Act and Copyright Act—Maryland law applies the "ordinary meaning" of the term "sale." *Id.* at 141. Like *Milo & Gabby*, *Erie* concluded that the "ordinary meaning" of the term "sale" is "the transfer of ownership of and the title to property from one person to another for a price." *Id.* Under that definition, the Fourth Circuit concluded Amazon could not be a statutory seller in these circumstances, because it neither took nor transferred title, nor set the price for the product there at issue. *Id.* at 142. "In short, Amazon functioned much like an auctioneer, a broker, a consignee, or a bailee, none of whom actually possesses title but nonetheless is, if it is a merchant, authorized to effect a transfer to the buyer of title held by the owner—i.e., the seller." *Id.* at 143.

Consider the implications of a contrary ruling on other bailees, like UPS. *Erie* did precisely that, when it rejected an argument that Amazon should be liable as a seller because it receives compensation for logistics-related services. *Id.* at 142. While "Amazon's services were extensive in facilitating the sale," they are "no more meaningful to the analysis than are the services provided by UPS Ground," without whose delivery the sale could not have been fully consummated. *Id.* Indeed, like *Milo & Gabby*, *Erie* acknowledged that under a subset of Amazon's services—Amazon's "Fulfillment" Services—Amazon *still* would not be liable even though it "provided logistics services for a fee." *Id.* Regardless of whether Amazon "collected payment" from the customer and shipped the product, that type of service is not fundamentally distinguishable from a "UPS Ground" delivery paid for by Cash on Delivery. *Id.* Though "Amazon possessed the

---

[3] The Federal Circuit looks to the UCC to define what constitutes a sale for patent purposes. *Minnesota Min. Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1307 (Fed. Cir. 2002) ("the UCC has been recognized as the general law governing the sale of goods and is another useful, though not authoritative, source in determining the ordinary commercial meaning of terms used by the parties") (cleaned up)); *Linear Technology Corp. v. Micrel, Inc.*, 275 F.3d 1040 (Fed. Cir. 2001).

[product] in its warehouse, [the manufacturer] set the price for the sale of the product to purchasers, designed the product description for the website, paid Amazon for its fulfillment services, and ultimately received the purchase price paid by the purchaser. In these circumstances, as Amazon explicitly posted on its site, Dream Light was the seller." *Id.* The only way to find Amazon to be a seller would be to vitiate a century of bailment law. The Fourth Circuit in *Erie* declined to do so, and this Court should too.

In light of the clear distinction between bailment and sellers, it is irrelevant as a matter of law that (1) Amazon's marketplace may have "made it easier for" X-sense and Aegislink to do business with its customers, and (2) that Amazon may make money in relation to its marketplace. *Allstate*, 2018 WL 3546197, at *10; *PharmaStem*, 491 F.3d at 1357. Both facts are inevitably true of all bailment relationships (which entail possession, storage, and transport, but not taking title), yet the Federal Circuit has recognized the deeply rooted distinction between bailees (like Amazon) and sellers (like X-Sense and Aegislink)—and has refused to find a bailee liable even when it charges a fee for a logistics-related service. *PharmaStem*, 491 F.3d at 1357. Thus, even if Amazon takes *possession* of a good—for example to facilitate transport of it—and then receives compensation for providing the service, those facts do not show a statutory sale as a matter of law because the product is still owned by the true seller. *Id.*

In sum, Plaintiff's attribution of the X-Sense and Aegislink smoke alarms to X-Sense and Aegislink, combined with the absence of plausible title-passing allegations, make Plaintiff's Complaint indistinguishable from *Milo & Gabby v. Amazon.com* and *Erie v. Amazon.com.* Consistent with that body of case law, longstanding principles of bailment law, and the ordinary usage of the term "sale," Amazon does not commit an act of infringement by Amazon by virtue of its general provision of a marketplace where third-party sellers can list their own goods for sale.

17

Any contrary approach would convert the nation's *shippers* into *sellers*, and vastly expand infringement liability in contravention of well-established bailment law.

### B.    Plaintiff Fails to Plausibly Plead the Required Intent and Affirmative Encouragement Elements of Induced Infringement

Plaintiff's Complaint also fails to state a claim for induced infringement for three reasons.

### 1.    Plaintiff Fails to Plausibly Plead the Existence of a Direct Infringer

Plaintiff fails to state a claim for induced infringement because it does not plead any acts of direct infringement by a third-party. *See supra* Section IV.A.1. As the name suggests, "inducement" is a theory of imputed liability where the defendant is alleged to induce a third party to infringe. Thus, "where there has been no direct infringement, there can be no inducement of infringement." *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 922 (2014). Accordingly, in order for Plaintiff to plead a claim for induced infringement, Plaintiff must first plausibly plead there is a third party that performs one of the enumerated acts of direct infringement. Because the Complaint has not pled that *any* third party makes, uses, sells, offers for sale, or imports a product that satisfies all the limitations of a claim of the Asserted Patent, Plaintiff has not plausibly pled Defendants have induced such party to infringe.

### 2.    Plaintiff Fails to Plausibly Plead Intent to Induce Infringement

Plaintiff's Complaint also fails to state a claim for induced infringement because it fails to plead the requisite knowledge and intent. *Wright Mfg. Inc.*, 2011 WL 6211172, at *3 (dismissing complaint because the law "required the plaintiff to include factual allegations sufficient to create a plausible claim of intent and knowledge" and the plaintiff failed to do so). Here, the Complaint has *no* allegations that Defendants had any knowledge of the patent before this suit was filed. *See generally* Complaint.

18

The Complaint further does not plausibly allege facts showing Defendants' specific intent to induce infringement of the Asserted Patent. *Wright Mfg.*, 2011 WL 6211172, at *3. Citing precedent from sibling courts, this Court found that "a complaint alleging that the Defendant 'performed acts that infringe and induce others to infringe' was a conclusory, fact-barren allegation that failed to state a claim for inducement to infringe under 35 U.S.C. § 271(b)." *Id.* (cleaned up). This Court rejected as insufficient an allegation that the defendant had "been aware of" the patent in suit as insufficient. *Id.* "More is required." *Id.* As in *Wright*, Plaintiff here "merely provides '[t]hreadbare recitals of the elements of a cause of action' that are inadequate." *Id.* (quoting *Iqbal*, 129 S. Ct. at 1949). Here, the Complaint has *no* allegations that Defendants had specific intent to induce infringement. *See generally* Complaint.

### 3.    Plaintiff Fails to Plausibly Plead Affirmative Acts of Encouragement

Plaintiff cannot allege that Amazon's mere provision of an e-commerce marketplace is an active, affirmative act of inducement. Amazon's general provision of a marketplace does not suffice to allege specific, culpable encouragement of the sale of a specific product. *California Beach Co., LLC v. Exqline, Inc.*, No. C 20-01994 WHA, 2020 WL 6544457, at *2 (N.D. Cal. Nov. 7, 2020). On a Rule 12(b)(6) motion, *Exqline* considered whether a defendant's "e-commerce platform"—Shopify—induced infringement of a merchant (Exqline) who used Shopify's services. *Id.* Shopify provided "a customizable e-commerce platform [the merchants] can use to set up an online storefront and to engage in online transactions," and took a percentage of the revenue made by sales made through the platform. *Id.* The patentee alleged that this platform, combined with Shopify's financial interest, constituted a well-pled allegation of induced infringement. *Id.* Judge Alsup flatly rejected the argument. He explained that induced infringement "requires an affirmative act animated by specific intent," and explained that "[i]naction, absent control over the

19

direct infringer or a duty to act, does not qualify as inducement." *Id.* at \*2–3. In light of those

principles, Judge Alsup found that:

> the complaint alleges no more than that Shopify, the landlord of a virtual strip-mall,
> provided a virtual plot and support services to and collected rents from Exqline—
> as it would *any of its tenant merchants*—and, therefore (we are to conclude),
> Shopify actively induced Exqline's infringement. That cannot be. The allegation
> that Exqline's products directly infringe the patent alone does not transform a
> defendants' usual course of conduct into inducement. And, no aspect of Shopify's
> alleged ordinary provision of services to all comers lets us plausibly infer that
> Shopify recommended, encouraged, promoted, or suggested infringement.
> Moreover, the allegations that Shopify had the power to suspend or terminate
> merchants' use of the platform, including for intellectual property violations, did
> not, as it might in the case of a parent company or alter-ego, vest Shopify with the
> authority or duty to police Exqline's commercial conduct.

*Id.* at \*2 (cleaned up) (emphasis in original). Put simply, "Shopify provided the virtual building

resources for Exqline's online store. What Exqline decided to sell was Exqline's business." *Id.*

Accordingly, the court granted the motion to dismiss for failure to plead that Shopify specifically

and affirmatively encouraged the sale of infringing goods.

*Exqline*'s reasoning is persuasive and consistent with well-settled bailment law.

Paraphrasing Judge Alsup, "[w]hat [X-Sense and Aegislink] decided to sell"—and whether [X-

Sense and Aegislink] decided to sell *anything*—"was [X-Sense and Aegislink's] business." *Id.* As

*Exqline* held, Amazon's mere provision of "a virtual plot and support services" is not equivalent

to the type of "culpable" "affirmative act" of specifically encouraging sales of specific products.

Plaintiff's Complaint does not allege that anyone other than X-Sense and Aegislink decide

(1) whether to list products, (2) what products to list, and (3) how much to charge. The Complaint

certainly does not allege that Defendants make any of those business decisions for X-Sense or

Aegislink. Passively allowing X-Sense and Aegislink to sell (or not) their products is not the same

as affirmative, active, and culpable acts of inducement of sales of specific products. Accordingly,

Plaintiff has failed to plausibly plead an affirmative act of inducement.

20

## C.    Plaintiff's Pro Se Status Does Not Obviate the Factual Deficiencies In the Complaint, Which Must Adhere to the Federal Pleading Requirements

Plaintiff's *pro se* status—and liberal construction of his Complaint—does not prevent the Court from dismissing this Complaint. Though Plaintiff's Complaint should receive liberal construction, given his status as a *pro se* plaintiff, "liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020). For example, in affirming dismissal of a Title VII complaint for failing to plead sufficient facts to plausibly assert employment discrimination, the Fourth Circuit made the following distinction:

> [Plaintiff's] complaint fails not because of unsophisticated language or the failure to adhere to formalities. It fails because he pled a non-discriminatory basis for his termination and no facts to support his conclusory allegations about the Google search. What's more, at oral argument, his counsel said [Plaintiff] had no other facts he could assert in good faith to support his claim.

*Bing*, 959 F.3d at 618. Put another way, liberal construction reads the Complaint generously, but it does not permit district courts to read theories that simply are not raised in the Complaint. While *pro se* "litigants cannot, of course, be expected to frame legal issues with the clarity and precision ideally evident in the work of those trained in law, neither can district courts be required to conjure up and decide issues never fairly presented to them." *Cecala v. NationsBank Corp.*, 40 F. App'x. 795, 798 (4th Cir. 2002). Although Plaintiff "has vaguely identified some issues in [his] complaint," *id.*, where, as here, a *pro se* plaintiff "utterly fails to identify any acts in support of such allegations," the Complaint fails to state a claim upon which relief may be granted and dismissal is appropriate. *Id.*

Even after construing Plaintiff's Complaint liberally, the Complaint nevertheless fails to state a claim upon which relief can be granted as a matter of law. With respect to Plaintiff's claim for direct inducement, (i) there's no plausible factual basis to assert that all components required

21

by the Asserted Patent are attributable to Defendants; and (ii) there's no plausible factual basis to conclude that Amazon (much less Ring) is a statutory seller of third-party products. Likewise, the Complaint fails to allege the knowledge and intent elements for induced infringement, and fails to demonstrate venue against Ring.

Finally, the Court should dismiss the Complaint without leave to amend, because Plaintiff has elected to stand on his Complaint despite an opportunity to amend. *Bing*, 959 F.3d at 611 (approving dismissal of case by pro se plaintiff who "elect[ed] to stand on the complaint" rather than amend). At the May 19 Case Management Conference regarding this Motion, Plaintiff explicitly declined this Court's offer allowing him to amend his Complaint to address the specific pleading deficiencies raised by Defendants which now form the basis of this motion. Given his election, it is appropriate for the Court to dismiss with prejudice.

### D.    Venue is Improper Against Ring LLC

#### 1.    Plaintiff Did Not and Cannot Plausibly Plead Venue Facts Against Ring.

Plaintiff cannot establish venue against Ring. In the Complaint, Plaintiff fails to make any relevant factual allegations regarding venue. *See generally* Complaint. Nor could it. As a Delaware corporation, Ring "resides" in the State of Delaware for purposes of § 1400(b). Also, Ring does not maintain a physical place of business in Maryland. Therefore, Ring does not "reside" in the District of Maryland and does it have a regular and established place of business in the District of Maryland. Venue, therefore, is improper against Ring. *See TC Heartland*, 581 U.S. 258, 266.

#### 2.    Venue for Amazon Cannot be Imputed to Ring

Plaintiff cannot impute venue against Amazon to Ring simply by virtue of Ring's status as a subsidiary of Amazon. *See Celgene Corp. v. Mylan Pharms. Inc.*, 17 F.4th 1111, 1122 (Fed. Cir.

22

2021). As a threshold matter, Plaintiff has alleged no facts at all (let alone plausible facts) that would impute venue to Ring on any basis. But settled law also would prevent doing so.

In *Celgene*, the Federal Circuit considered whether venue against Mylan Pharmaceuticals Inc. ("MPI") could be justified by virtue of the presence of Mylan Laboratories, Inc. ("MLI"), a wholly owned subsidiary of MPI which had a physical presence in the relevant district. *Id.* at 1125. The Federal Circuit declined to impute MLI's presence to MPI, based on a rule that "the place of business of one corporation is not imputed to the other for venue purposes," unless the patentee could prove an "alter-ego or veil-piercing theory." *Id.* "[T]his is an inquiry into whether the entities' separateness 'is little more than a legal fiction'—a 'notoriously difficult' burden." *Id.* at 1126. "Plaintiffs 'must essentially demonstrate that in all aspects of the business, the two corporations actually functioned as a single entity.'" *Id.* The Court held that the patentee failed to make the necessary showing to prove alter ego, even though the patentee showed "shared marketing, branding, and trade names," as well as significant business support related to providing products and even an MPI employee signing contracts on behalf of MLI. *Id.* Nonetheless, the Federal Circuit declined to impute venue, explaining that "courts have refused to pierce the veil even when subsidiary corporations use the trade name of the parent, accept administrative support from the parent, and have a significant economic relationship with the parent." *Id.* Nor was there an evidentiary showing "that MLI is 'undercapitalized or insolvent, that its officers and directors are strawmen, or that MLI lacks its own books and records.'" *Id.* Thus, "[a]t most, the evidence shows collaboration, not commonality," which is not enough to meet the "burden of showing that corporate separateness has not been maintained." *Id.*

Under *Celgene*, Plaintiff has come nowhere near meeting the "notoriously difficult" burden of showing that venue against Amazon should be imputed to Ring. Initially, after recognizing that

Ring and Amazon are two separate entities—the Complaint accuses both Ring LLC and Amazon.com Inc—Plaintiff has not argued that Ring and Amazon have failed to maintain corporate forms. Nor could Plaintiff: there is absolutely none of the evidentiary showing that would justify piercing the corporate veil. Plaintiff does not (and could not) argue that Ring is essentially an undercapitalized shell copy staffed by strawmen, or point to anything that would overcome the presumption of "corporate separateness." Indeed, Amazon and Ring do not even share the overlap in trade name that was present (but insufficient) for *Mylan* Pharmaceuticals and *Mylan* Laboratories.

Nor is there any basis to impute Amazon's presence to Ring on the basis of an agency theory. *See, e.g., Andra Grp., LP v. Victoria's Secret Stores, L.L.C.*, 6 F.4th 1283, 1289-90 (Fed. Cir. 2021) (rejecting the patentee's argument that the intermixing of business operations was sufficient to demonstrate an agency relationship and holding that ratification by a parent company required proof that the parent company itself "actually engage[d] in business from that location," in a way that justified imputing the location to the parent); *In re Volkswagen Grp. of Am., Inc.*, 28 F.4th 1203, 1208-12 (Fed. Cir. 2022) (rejecting the patentee's attempt to impute the fanchisees' locations to the parent companies under an agency theory, concluding that despite extensive (and obvious) connections between the franchisees and the franchisor, there were "no 'step-by-step' instructions" reflecting "full control over their day-to-day operations"); *Modern Font Applications LLC v. Peak Resturant Partners, LLC*, Civil Action No. 2:19-CV-221-TS-DBP, 2020 WL 1692744, at *4 (D. Utah April 7, 2020), *aff'd*, No. 2020-2278, 2022 WL 726972 (Fed. Cir. Mar. 10, 2022) ("As a general rule, a subsidiary's presence in a venue cannot be imputed to a parent unless the corporation disregards corporate formalities, lacks formal corporate separateness, or the subsidiary is the parent corporation's alter ego," and "[c]ourts are typically reluctant to conclude

24

that corporate formalities are being ignored."). Here, the Complaint does not (and cannot) allege that Amazon and Ring failed to maintain "corporate formalities" (*Modern Font Applications*) or that Amazon exercised the type of exacting "full control over their day-to-day operations" as required by the venue statute (*Volkswagen*).

Accordingly, Ring should be dismissed pursuant to Rule 12(b)(3) for lack of proper venue.

## V.   CONCLUSION

Defendants respectfully requests the Court dismiss Plaintiff's Complaint with prejudice.

Dated: June 9, 2023

Respectfully submitted,

**DLA PIPER LLP (US)**

_____/s/_____
Daniel E. Larkins (Bar No. 21244)
500 Eighth Street NW
Washington, DC 20004
T: (202) 799-4203
daniel.larkins@us.dlapiper.com

Jennifer Librach Nall (admitted _pro hac vice_)
303 Colorado Street, Ste. 3000
Austin, TX 78701
T: (512) 457-7249
jennifer.nall@us.dlapiper.com

Ferlillia V. Roberson (admitted _pro hac vice_)
444 West Lake Street, Ste. 900
Chicago, IL 60606
T: (312) 368-3903
ferlillia.roberson@us.dlapiper.com

Catherine Huang (admitted _pro hac vice_)
401 B Street, Ste. 1700
San Diego, CA 92101
T: (619) 699-2744
catherine.huang@dlapiper.com

Christian Chessman (admitted _pro hac vice_)
500 Eighth Street NW
Washington, DC 2004
T: (410) 580-4484
christian.chessman@us.dlapiper.com

_Attorneys for Defendants Amazon.com, Inc. and Ring LLC_

26